UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DONALD E. MITCHELL, JR., | Case No. 3:23-cv-00276-MMD-CSD |
| Plaintiff, | ORDER |
| v. | |
| N. BREITENBACH, *et al.*, | |
| Defendants. | |

**I.    SUMMARY**

On July 1, 2024, the Court screened Plaintiff Donald E. Mitchell, Jr.'s Second Amended Complaint ("SAC") under 28 U.S.C. § 1915A. (ECF No. 10.) The Court allowed some claims to proceed, dismissed other claims with or without prejudice, and gave Mitchell leave to file a third amended complaint within 30 days. (*Id.*) The Court explained that any third amended complaint would replace the SAC and thus must be complete in itself, including all the factual allegations and claims that Mitchell wished to pursue. (*Id.*) In response, Mitchell filed an incomplete third amended complaint that failed to include any new allegations to support the claims that the Court had previously dismissed, and also included his colorable claims only by reference to the SAC. (ECF No. 12.) Given these deficiencies, the Court declined to accept this incomplete third amended complaint as the operative complaint and moved the case to the Court's Inmate Early Mediation Program, with the SAC as the operative complaint. (ECF No. 14.) The parties participated in a mediation conference but failed to reach a settlement, and the Court set the case on a normal litigation track in December 2024. (ECF No. 19.)

Now before the Court is Mitchell's motion for reconsideration of the Court's July 1, 2024, screening order. (ECF No. 21 ("Motion").)

///

1    **II.    DISCUSSION**

2          A motion for reconsideration must set forth "some valid reason why the court

3    should reconsider its prior decision" and set "forth facts or law of a strongly convincing

4    nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256

5    F.Supp.2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if the Court "(1) is

6    presented with newly discovered evidence, (2) committed clear error or the initial decision

7    was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist.*

8    *No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration

9    is not an avenue to re-litigate the same issues and arguments upon which the court

10   already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F.Supp.2d 1280, 1288 (D. Nev.

11   2005).

12         In his Motion, Mitchell asks the Court to allow him to file a fourth amended

13   complaint, to reinstate his Fourteenth Amendment claim in Count II of the SAC, and to

14   allow "Claim 3" to proceed based on newly discovered evidence. (ECF No. 21 at 1.) Claim

15   3 appears to be a new claim based on allegations that NDOC officials knew that their

16   drug testing methods are faulty, rather than the claim in Count III of the SAC. (*Id.* at 15-

17   22.) The Court will consider each of these requests in turn.

18         **A.    Request to File a Fourth Amended Complaint**

19         Mitchell's request to file a fourth amended complaint is denied without prejudice.

20   Under the Local Rule of Civil Practice 15-1, "the moving party must attach the proposed

21   amended pleading to a motion seeking leave of the court to file an amended pleading."

22   LR 15-1. Thus, if Mitchell wants to file a fourth amended complaint, the proper mechanism

23   is not a motion for reconsideration of the screening order, but a motion to file an amended

24   pleading. Together with his motion, Mitchell must also file a proposed fourth amended

25   complaint. The Court will decide whether to accept a proposed fourth amended complaint

26   after reviewing any such motion to amend and the attached proposed fourth amended

27   complaint.

28   ///

**B.    Request to Allow Claim 3 to Proceed**

As with Mitchell's request to file a fourth amended complaint, Mitchell's request to allow a new claim to proceed is not properly brought in a motion for reconsideration. A motion for reconsideration is a request that the Court reverse a prior decision. Because the claim that Mitchell is proposing to add was not part of the SAC, the Court did not make any prior decision regarding that claim. Thus, the Court will not decide at this time whether the new proposed claim is colorable or is properly joined to this case. Mitchell may include the claim in any proposed fourth amended complaint, and he may explain in his motion to file a fourth amended complaint why he believes that the Court should allow him to add this claim to this case. If the Court accepts the proposed fourth amended complaint, the Court will then screen this additional claim and determine whether Mitchell states a colorable claim and whether it is properly joined in this case.

**C.    Request to Allow Mitchell's Claim in Count II to Proceed**

Mitchell also requests that the Court reinstate his due process claim asserted in Count II of the SAC. As an initial matter, the Court notes that Mitchell's due process claim was dismissed without prejudice and with leave to amend. Mitchell failed to include any new allegations in the third amended complaint to support this claim. If Mitchell includes additional factual allegations regarding this claim in any proposed fourth amended complaint, the Court will consider whether the new allegations are sufficient to support a colorable claim. If the Court accepts Mitchell's proposed fourth amended complaint, it will replace the SAC, and the question of whether the SAC states a colorable claim will be moot. However, because it is not clear whether Mitchell will choose to file a proposed fourth amended complaint, the Court will address the merits of his request to reinstate the due process claim from Count II of the SAC.

In Count II of the SAC, Mitchell alleges that he was found guilty during a disciplinary hearing without being afforded due process, and he was sanctioned to a loss of canteen privileges and 30-days solitary confinement "with stat referral for loss of stat time." (ECF No. 9 at 19-20.) The 30-day period of disciplinary segregation was suspended because

1  of time Mitchell spent in segregation. (*Id.* at 20.) Mitchell also alleged that the disciplinary

2  report contributed to his subsequent parole denial. (*Id.* at 22.)

3        The Court dismissed Mitchell's due process claim without prejudice because the

4  allegations in the SAC did not support the existence of a protected liberty interest. (ECF

5  No. 10 at 8-9.) In his motion for reconsideration, Mitchell focuses on allegations that he

6  was denied a "fair" hearing. (ECF No. 21 at 8-14.) But that was not at issue in the Court's

7  screening order. The Court did not determine that Mitchell received a "fair" hearing

8  constituting due process. Rather, the Court found that Mitchell failed to establish the

9  existence of an underlying liberty interest. As the Court explained in its screening order,

10  to state a claim for deprivation of procedural due process, a plaintiff must first establish

11  the existence of a liberty interest for which the protection is sought. *See Sandin v. Conner*,

12  515 U.S. 472, 487 (1995). If a plaintiff does not establish such a liberty interest, he cannot

13  state a due process claim regardless of whether he had a fair hearing.

14        In the motion for reconsideration, Mitchell appears to argue that a loss of good-

15  time credits supports a liberty interest, citing to *Reynolds v. Wolff*, 916 F. Supp. 1018,

16  1023 (D. Nev. 1996). (ECF No. 14-15.) Mitchell is correct that under some circumstances,

17  the revocation of good-time credits does support the existence of a liberty interest. In

18  *Sandin*, the Supreme Court held that, even when a state statute uses mandatory

19  language creating rights under state law, a state can create a liberty interest that invokes

20  procedural protections under the Due Process Clause only if the state's action "will

21  *inevitably* affect the duration of his sentence" or if there are prison conditions that impose

22  "atypical and significant hardship on the inmate in relation to the ordinary incidents of

23  prison life." 515 U.S. at 484, 487 (emphasis added). The Supreme Court characterized

24  the issue regarding the treatment of good-time credits as a liberty interest in a "shortened

25  prison sentence" which resulted from a statutory requirement that good-time credits were

26  revocable only if the prisoner was guilty of serious misconduct. *Id.* at 477 (quoting *Wolff*

27  *v. McDonnell*, 418 U.S. 539, 557 (1974)). Thus, a prisoner has a liberty interest in good-

28  time credits that will *inevitably* affect the length of his sentence.

In the Court's screening order, the Court explained that Nevada's parole scheme intentionally and explicitly makes parole discretionary; an offender therefore is not required to be released once he serves the minimum term and is only considered for parole at that time. *See Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010). An earlier parole eligibility date does not *inevitably* affect the duration of a prisoner's sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (holding that speeding up consideration for parole does not necessarily imply the invalidity of the duration of the prisoner's sentence); *Klein v. Coblentz*, 132 F.3d 42 (10th Cir. 1997) (unpublished disposition) (relying on *Sandin* to hold that, where good-time credits applied under state law only to determining the prisoner's parole eligibility date and not to a sentence reduction, the loss of credits did not inevitably increase the duration of the sentence and there was no liberty interest giving rise to due process protections). Therefore, a prisoner in Nevada does not have a liberty interest in good-time credits applied to his minimum sentence.

Although a Nevada prisoner cannot establish a liberty interest in good-time credits toward his minimum sentence, he could potentially establish a liberty interest in good-time credits toward his *maximum* sentence. The Ninth Circuit recently addressed that issue in *Galanti v. Nevada Dep't of Corr.*, 65 F.4th 1152, 1154 (9th Cir. 2023). In *Galanti*, a Nevada inmate brought a claim based on a denial of good-time credits, and the district court found that he had no liberty interest in good-time credits toward his minimum sentence. *See id.* at 1156-57. However, the Ninth Circuit held that the district court should have also considered whether the plaintiff stated a colorable due process claim regarding good-time credits toward his maximum sentence. *See id.*

For a prisoner serving a set number of years, good-time credits toward his maximum sentence necessarily affect the length of his sentence and thus they give rise to a liberty interest. However, this would not be true for an inmate serving a life sentence. For an inmate serving a life sentence, any good-time credits toward his maximum sentence would not necessarily affect the length of his sentence. The Ninth Circuit has found that a Nevada prisoner serving a life sentence could not state a due process claim

regarding good-time credits because "Nevada has not created a liberty interest in the application of good-time credits to a life sentence." *Witherow v. Farwell*, 383 F. App'x 688 (9th Cir. 2010).

In his SAC, Mitchell did not clearly articulate what, if any, good-time credits he actually lost. Mitchell states only that his case was referred for a "loss of stat time." According to NDOC's Inmate Database, Mitchell is serving a life sentence. Moreover, it appears that Mitchell has already reached his minimum sentence. Thus, it does not appear that Mitchell could have lost good-time credits towards either his minimum or his maximum sentence.

In addition, even if NDOC's Inmate Database is incorrect and Mitchell is not in fact serving a life sentence, any due process claim regarding good-time credits toward his maximum sentence would appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been . . . invalidated is not cognizable under § 1983." *Id.* at 487. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* The "*Heck* rule applies to claims for unconstitutional deprivation of good-time credits, if a favorable judgment would imply the invalidity of such deprivation. *See Galanti*, 65 F.4th at 1155 (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)). In other words, while a Nevada prisoner serving a defined term of imprisonment

may have a liberty interest in good-time credits toward his maximum sentence, he can only bring that claim in a § 1983 case if the denial of good-time credits has already been declared invalid by a court or similar state agency.

In sum, Mitchell cannot establish a liberty interest in good-time credits toward his minimum sentence because he does not have a liberty interest in parole. If Mitchell is serving a life sentence, as NDOC records indicate, he also cannot establish a liberty interest in good-time credits toward his maximum sentence. If Mitchell is not serving a life-sentence, he could establish a liberty interest in good-time credits toward his maximum sentence, but that claim would be barred by *Heck*, unless Mitchell could establish that he already successfully challenged the revocation in a habeas corpus petition or other similar proceeding.

Because the SAC does not allege facts to support that Mitchell lost good-time credits toward a determinate maximum sentence and that he successfully challenged the lost credits in a habeas corpus proceeding, the SAC does not support the existence of a cognizable liberty interest. And because the SAC does not establish the existence of a liberty interest, it cannot a colorable due process claim. Accordingly, the Court denies Mitchell's request to reinstate the due process claim from Count II of the SAC.

## III.  CONCLUSION

It is therefore ordered that Mitchell's motion for reconsideration (ECF No. 21) is denied. As set out in this order, Mitchell may file a motion requesting leave to file a fourth amended complaint, together with a proposed fourth amended complaint.[1] If Mitchell files a proposed fourth amended complaint, the Court will then decide whether to accept and screen the fourth amended complaint.

DATED THIS 25th Day of April 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[1]The scheduling order provides that any motions for leave to amend must be filed by June 24, 2025. (ECF No. 32 at 6.)