UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| DONALD E. MITCHELL, JR.,<br><br>          Plaintiff<br><br>v.<br><br>N. BREITENBACH, et al.,<br><br>          Defendants | Case No.: 3:23-cv-00276-CSD<br><br>**Order**<br><br>Re: ECF Nos. 49, 56, 57, 58 |

Defendants have filed a motion to dismiss Plaintiff's Fourth Amended Complaint. (ECF Nos. 49, 49-1.) Plaintiff filed a response as well as a motion for an extension of the page limits for his response. (*See* ECF No. 56 at 1-49 (response), ECF No. 56 at 50-55 (motion for extension of page limits), ECF Nos. 57, 58 (over 400 pages of exhibits).) Defendants filed a reply. (ECF No. 66.)

For the reasons set forth below, Plaintiff's motion for an extension of the page limits is denied, and Defendants' motion to dismiss is granted in part and denied in part.

**I. MOTION FOR EXTENSION OF PAGE LIMITS**

Plaintiff states that he needs to extend the page limits for his response in order to demonstrate sufficient facts support his claims.

A response to a motion to dismiss is limited to 24 pages. LR 7-3(b). A motion to file a brief that exceeds the page limits is disfavored and must be supported by a showing of good cause. LR 7-3(c).

Preliminarily, pages 6 to 33 of the response unnecessarily repeat, nearly verbatim, the allegations of the Fourth Amended Complaint. Moreover, in reviewing a motion to dismiss for

failure to state a claim, the court must accept as true the allegations of the complaint, and the court may not consider materials outside of the complaint except documents that are part of the complaint itself, those that may be incorporated by reference, and those matters of which the court may take judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976). As such, the court may not consider the hundreds of pages of exhibits Plaintiff seeks to include with his response to the motion to dismiss (unless they are already a party of the operative complaint, in which case it is not necessary to file them again).

In sum, Plaintiff's motion to exceed the page limits for his response is denied. The court will only consider the argument set forth at pages 35 to 49 of Plaintiff's response along with the Fourth Amended Complaint and attached exhibits.

## II. MOTION TO DISMISS

**A. Background**

Plaintiff is an inmate in custody of the Nevada Department of Corrections (NDOC) proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983.

The court screened Plaintiff's Second Amended Complaint, and allowed Plaintiff to proceed with two claims from his Claim 1: a First Amendment right to send and receive mail claim against Breitenbach, Hartman, Henley, Suwe, Santos and Hicks; and First Amendment retaliation claims against Suwe, Breitenbach, Wolf, Klein, Gregory, and Fluhrer. (ECF No. 10.)

The First Amendment mail claim is based on allegations that Plaintiff's family sent him six photos in January 2023, but it took him 12 days to receive his photos. Plaintiff alleges that

Breitenbach, Hartman, and Henley authorized Suwe, Santos, and Hicks to withhold Plaintiff's mail for 12 days with no legitimate penological purpose.

With respect to the First Amendment retaliation claim, Plaintiff alleges that in retaliation for filing grievances, defendant Suwe issued two false disciplinary charges against him. Plaintiff then met with Breitenbach, who instructed Plaintiff to stop filing kites and grievances, and had Plaintiff placed in administrative segregation the next day. Plaintiff avers that Wolf, Klein, and Gregory stole some of Plaintiff's property in retaliation for his grievances. Finally, Plaintiff alleges that Fluhrer, the property sergeant, covered up the theft.

Plaintiff's due process claims in Claim 2 (related to his placement in administrative segregation and his disciplinary proceedings) were dismissed with leave to amend.

In Claim 3, Plaintiff attempted to assert a due process claim based on a false notice of charges and an equal protection claim based on offensive racial statements. The due process claim was dismissed with prejudice. The equal protection claim was dismissed with leave to amend.

Plaintiff's claims under 42 U.S.C. §§ 1985, 1986, 1988 were all dismissed.

Plaintiff filed a Third Amended Complaint (ECF No. 12). However, the court ruled that the Second Amended Complaint was still the operative complaint because Plaintiff's Third Amended Complaint was not complete in and of itself, and it did not include any new allegations that addressed the deficiencies found in the SAC. (ECF No. 14.)

Plaintiff subsequently sought leave to amend to file a Fourth Amended Complaint. (ECF No. 36.) The court granted the motion because Defendants did not oppose the motion for leave to amend. (ECF No. 43.)

Defendants have now filed a motion to dismiss the Fourth Amended Complaint. (ECF No. 49.)

**B. Legal Standard**

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

The court employs this same standard in screening an inmate's complaint to determine whether the inmate fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A; *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

**C. Discussion**

      **1. Defendants and Claims in the Fourth Amended Complaint**

      Plaintiff's Fourth Amended Complaint names the following Defendants: Nethanjah Breitenbach (Warden), Robert Hartman (Northern Nevada Correctional Center (NNCC) Associate Warden), John Henley (NNCC Associate Warden), Shawn Fluhrer (NNCC Correctional Sergeant), Robert Suwe (NNCC Senior Correctional Officer), James Dzurenda (NDOC Director), Brian Williams, Sr. (NDOC Deputy Director), Kristy Fonoimoana (NNCC Correctional Lieutenant), Krista Harris (NNCC Correctional Caseworker Specialist), Donald Hicks (NNCC Correctional Officer), Danilo Santos (NNCC Correctional Officer), Christopher Gregory (NNCC Correctional Officer), Trenton Klein (NNCC Correctional Officer), and Travis Wolf (NNCC Correctional Officer).

      The Fourth Amended Complaint contains three claims, which the court will now address in turn.

      **2. Claim 1**

      Claim 1 of the Fourth Amended Complaint is identical to Claim 1 of the Second Amended Complaint. Therefore, the only claims the court will address with respect to Claim 1 are those the court previously determined Plaintiff can proceed on screening: the First Amendment mail claim against Breitenbach, Hartman, Henley, Suwe, Santos, and Hicks, and the First Amendment retaliation claims against Suwe, Breitenbach, Wolf, Klein, Gregory and Fluhrer.

      Claim 1 contains allegations concerning missing property (nude magazines, food items, a book titled, "Female Brain," and a photo of Plaintiff's daughter). Defendants' motion to dismiss argues that this claim should be dismissed. These allegations were also present in the Second

Amended Complaint. The court did not allow Plaintiff to proceed with a due process property claim when it screened the prior complaint, and the court will not construe the Fourth Amended Complaint, which asserts identical allegations, as stating such a claim now.[1] Those allegations will only be considered with respect to Plaintiff's retaliation claim, and the court need not address Defendants' argument in this regard.

### a. First Amendment Mail Claim

Defendants argue that Plaintiff fails to state a claim for relief because Plaintiff alleges he was under investigation and received a notice of charges relating to the possession/sale of intoxicants through the mail system. As such, they contend the temporary delay in receiving his mail did not violate his First Amendment rights because there was a legitimate penological reason for the delay.

Plaintiff alleges the photos were sent by his family in early January 2023, and he did not receive them for 12 days. The mail rejection asserting that Plaintiff was under investigation for conspiracy to introduce contraband into the facility is dated February 9, 2023. (ECF No. 44 at 60.) In fact, a grievance response attached to Plaintiff's Fourth Amended Complaint indicates the mail that was the subject of the rejection arrived that same day: February 9, 2023. (*Id*. at 45.) Therefore, it is not clear from the Fourth Amended Complaint that Plaintiff was under investigation during the time period when the six photos were sent by his family in early January 2023, and that there was a legitimate penological reason for the delay in giving him the photos sent by his family in early January.

---

[1] Plaintiff alleges that certain NDOC staff members stole his property, and an unauthorized taking of property is not actionable where the state provides a meaningful post-deprivation remedy for the loss of the property. *See Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990). Plaintiff's pleadings acknowledged that he brought a small claims action related to these property items.

Therefore, Defendants' motion to dismiss is denied as to the First Amendment mail claim in Claim 1.

### b. First Amendment Retaliation Claim

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

#### i. Disciplinary Charges and Suwe

Plaintiff alleges that in retaliation for filing grievances, defendant Suwe issued two false disciplinary charges against him.

Defendants argue that Plaintiff does not include facts to show a causal connection between his filing of a grievance and the disciplinary charge, that his First Amendment rights were chilled, or that the action did not advance a legitimate correctional goal.

Plaintiff alleges the photos sent from his family in the beginning of January 2023 were delayed for 12 days. (ECF No. 44 at 19.) He goes on to allege that in February 2023, he filed a grievance regarding the withholding of his mail by Suwe, Santos, and Hicks. (*Id*. at 20, 121-123.) Suwe sent Plaintiff a mail rejection on February 9, 2023, informing Plaintiff he was under investigation for conspiracy to introduce contraband into the facility. (*Id.* at 60.) Plaintiff sent another grievance on February 9, 2023, about the mail that was rejected by Suwe that day. (*Id*. at

8

57-59.) In that grievance, Plaintiff asserted that he was being retaliated against for filing a grievance about his housing level being reduced. (*Id*. at 59.) A grievance response attached to the Fourth Amended Complaint indicates that Plaintiff was subject to a notice of charges dated February 10, 2023 (the day after he filed his grievance about Suwe's mail rejection). (*Id*. at 45.)

Plaintiff avers that because he filed this grievance about his mail being delayed, shortly thereafter, Suwe subjected him to false charges. The proximity of the filing of the grievances related to his mail and the notice of charges are sufficient at this juncture to allege causation between the adverse activity and protected conduct. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)

"[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005)). Plaintiff's allegations are sufficient to allege, at the pleading stage, that a person of ordinary firmness would be chilled in their First Amendment activities.

Finally, whether or not there was a legitimate penological goal supporting the notice of charges can be developed at the summary judgment stage.

In sum, the court finds the allegations are sufficient to state a retaliation claim against Suwe at the pleading stage.

### ii. Placement in Administrative Segregation and Breitenbach

Plaintiff alleges that he met with Breitenbach, who instructed Plaintiff to stop filing kites and grievances, and then had Plaintiff placed in administrative segregation.

Defendants do not specifically address the retaliation claim against Breitenbach; therefore, it will proceed.

### iii. Property and Wolf, Klein, Gregory, and Fluhrer

Defendants argue that Plaintiff's statement that Wolf, Klein, and Gregory were the last persons to be in possession of his property does not mean that they stole his property. They further argue that he does not allege that they did so in retaliation for any protected activity so as to allege a causal connection between the adverse action and protected conduct.

Plaintiff alleges that when he was moved to administrative segregation he subsequently received his property and discovered he was missing various property items. He avers that Wolf, Klein, and Gregory were the last people to be in possession of his property, and they "robbed him" of 10 nude magazines, food items, a book titled, "Female Brain," and a photo of his daughter. He claims that a John Doe officer told Plaintiff it was Wolf, Klein, and Gregory that packed up his property, and so they were the ones who stole the property. Plaintiff sent an inmate request form to Fluhrer about the missing property, and Fluhrer responded that he did not see any magazines on the property card, and that he would "get with C/O Wolf about said magazines." Plaintiff alleges that he believes this was a lie, and that Fluhrer conspired with Wolf, Klein, and Gregory to erase records of the magazines from his property card, "in furtherance of retaliation." (ECF No. 44 at 23-24.)

The court agrees that Plaintiff does not sufficiently allege that his property was taken *because of* any protected conduct. There are no allegations that Plaintiff filed any prior grievances regarding the conduct of Wolf, Klein, Gregory, or Fluhrer, or that any of those Defendants were aware of or involved in grievances related to any other alleged misconduct.

10

The only grievance specifically mentioned by Plaintiff is the grievance filed against Suwe, Santos, and Hicks in February for delaying the photographs sent by his family in January 2023.

Plaintiff also alleges that before he met with Breitenbach on April 6, 2023, he had sent kites protesting mistreatment and verbal abuse from correctional staff because he was black, but he does not assert any of the Defendants named in this claim were aware of the kites or were participants in this alleged conduct.

Plaintiff attaches various kites and grievances to his Fourth Amended Complaint, but the only ones involving these Defendants are those complaining about the taking of his property, and not any that pre-date the taking of his property. (*See* ECF No. 44 at 43.)

There is simply no alleged connection between the taking of Plaintiff's property by these Defendants and any protected activity on Plaintiff's part. Therefore, Defendants' motion to dismiss the retaliation claim against Wolf, Klein, Gregory and Fluhrer is granted.

**3. Claim 2**

Claim 2 starts of by repeating (almost verbatim) many of the allegations from Claim 1 (from both the Second Amended Complaint and Fourth Amended Complaint) regarding Plaintiff's reduction from level one housing to level three housing, which was more restrictive. (Compare ECF No. 44 at 20 with ECF No. 44 at 7 and ECF No. 9 at 8-9.) He goes on to repeat other allegations from Claims 1 and 2 of his Second Amended Complaint that:

- He was taken to Unit 7 and given an administrative segregation notice of classification hearing (ECF No. 44 at 8; ECF No. 9 at 10);
- He had a classification hearing on April 11, 2023 before Fonoimoana and Harris (ECF No. 44 at 8; ECF No. 9 at 10);

11

- His request for inmate substitute counsel was not acknowledged, and he was told he was placed in administrative segregation pending the outcome of the investigation for safety and security of the institution (ECF No. 44 at 9; ECF No. 9 at 10)
- The Deputy Director did not look into anything and he remained in this housing placement until his parole hearing on April 24, 2023 (ECF No. 44 at 9; ECF No. 9 at 11);
- He appeared for his parole hearing on April 24, 2023, and was told no action would be taken as a result of the disciplinary write ups (ECF No. 44 at 9; ECF No. 9 at 13);
- His parole hearing was rescheduled, and the service of the write ups was belated (ECF No. 44 at 9-10; ECF No. 9 at 13-14, 16-17);
- He had his disciplinary hearing before Fonoimoana and Harris on May 30, 2023; he told Fonoimoana that he though the notice of charges were retaliatory by Suwe; Fonoimoana said Suwe was not conspiring against him; Fonoimoana became upset with Plaintiff and Plaintiff told Fonoimoana he did not believe he was going to get a fair hearing; Fonoimoana told Plaintiff not to question her integrity; Plaintiff's disciplinary hearing resumed on June 1, 2023; Plaintiff requested the results of the test, confidential informant statements, and to view the envelopes to dispute the charges; Plaintiff did not know anyone from Sparks (where the envelopes supposedly originated); his request to view the content of the envelopes and the test results were denied; Fonoimoana showed Plaintiff a picture of what she claimed was a test result, but Plaintiff claimed it did not establish anything because it was black and white; Fonoimoana only played one of the phone conversations that purportedly incriminated Plaintiff; and Plaintiff was found guilty of the charges (ECF No. 44 at 11-14; ECF No. 9 at 17-18);

- He was not allowed to participate in any programming or schooling and had to move with restraints (ECF No. 44 at 15; ECF No. 9 at 8-9);
- He was sanctioned with loss of canteen privileges for 30 days, and 30 days in solitary confinement with a referral for loss of stat time, but the 30 days in solitary confinement was suspended; the charge for threats was amended to abusive language and Plaintiff was given a sanction of 14-daysof lost phone privileges (ECF No. 44 at 15-16; ECF No. 9 at 19-20);
- He filed a disciplinary appeal, which was denied by Breitenbach and Williams, and they violated the time constraints of responding to the appeals (ECF No. 44 at 16; ECF No. 9 at 21)

In sum, Plaintiff does not include any *new* allegations that correct the deficiencies noted with respect to Claim 2 of the Second Amended Complaint. The only new allegation in Claim 2 is that the charges were stacked in violation of NDOC Administrative Regulation; however, the court advised Plaintiff in the order screening the Second Amended Complaint that allegations that Defendants violated state law are insufficient to support a due process violation. (*See* ECF No. 10 at 8.) The allegations concerning Plaintiff's level reduction and housing status while he was pending his disciplinary proceeding were included in his Second Amended Complaint, which the court found insufficient to implicate a liberty interest. Plaintiff includes no new allegations to demonstrate he faced an atypical and significant hardship so as to implicate a liberty interest and trigger the protections of the Due Process Clause.

Therefore, Claim 2 is dismissed from the Fourth Amended Complaint.

///

///

### 4. Claim 3

Claim 3 is an entirely new claim that focuses on the testing of the mail that was the subject of Plaintiff's disciplinary proceeding by utilizing a drug test, specifically, the MMC-International BV test, which purports to detect synthetic cannabinoids. Plaintiff alleges this test is not accurate and frequently creates a false positive result. Plaintiff contends that if the result comes back positive, NDOC tells the inmate they can accept responsibility for the crime, or request a laboratory test, which can take months, and which an inmate must pay for if the result comes back positive.

Claim 3 suffers from several deficiencies.

First, this claim does not contain any substantive allegations indicating the personal participation of any named Defendant. Plaintiff vaguely alleges that NDOC operates under the direction of Dzurenda, and includes conclusory allegations regarding the other named Defendants. To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated, and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant must have "personally played a role in violating the Constitution.").

Second, Plaintiff attempts to bring this claim on behalf of himself and all similarly situated people, but this is not a class action and Plaintiff is only permitted to pursue claims on his own behalf. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("the privilege to represent oneself *pro se* … is personal to the litigant and does not extend to other parties or

entities"); *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself.").

Finally, even if Plaintiff included sufficient allegations against a particular defendant, and did not attempt to bring this claim on behalf of other inmates, Plaintiff fails to state a claim upon which relief may be granted. This is because, as discussed *infra*, Plaintiff still has not alleged a liberty interest that triggers the protections of the Due Process Clause.

Therefore, Claim 3 is dismissed from the Fourth Amended Complaint.

### III. CONCLUSION

(1) Plaintiff's motion to exceed the page limits for his response (motion set forth at ECF No. 56 at 50-55 and exhibits at ECF Nos. 57, 58) is **DENIED**.

(2) Defendants' motion to dismiss (ECF No. 49) is **GRANTED IN PART** insofar as Claims 2 and 3 of the Fourth Amended Complaint are **DISMISSED**, and the retaliation claim against Wolf, Klein, Gregory, and Fluhrer in Claim 1 is **DISMISSED**. The motion to dismiss the retaliation claim against Suwe in Claim 1 is **DENIED**.

(3) This action is now proceeding with the following: (1) the First Amendment mail claim in Claim 1 against Breitenbach, Hartman, Henley, Suwe, Santos, and Hicks; and (2) the retaliation claims in Claim 1 against Suwe and Breitenbach.

**IT IS SO ORDERED**.

Dated: October 30, 2025

_____
Craig S. Denney
United States Magistrate Judge