**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DONALD E. MITCHELL, JR.,

     Plaintiff

v.

N. BREITENBACH, et al.,

     Defendants

Case No.: 3:23-cv-00276-CSD

**Order**

Re: ECF Nos. 75, 87

Before the court is Plaintiff's motion for summary judgment. (ECF Nos. 87, 87-1 to 87-4, 95.) Defendants filed a response. (ECF No. 98.) Plaintiff filed a reply. (ECF Nos. 99, 100-1, 100-2.)

Defendants have also filed a motion for summary judgment. (ECF No. 87.) Plaintiff filed a response. (ECF No. 96.) Defendants filed a reply. (ECF No. 102-1.)

For the reasons set forth below, Plaintiff's motion is denied, and Defendants' motion is granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC).

This action is proceeding with two claims: (1) a First Amendment mail claim against Breitenbach, Hartman, Henley, Suwe, Santos, and Hicks, and (2) First Amendment retaliation claims against Suwe and Breitenbach. (*See* ECF Nos. 10, 14, 43, 71.)

The First Amendment mail claim is based on allegations that Plaintiff's family sent him six photographs in January 2023, but it took 12 days for Plaintiff to receive this mail. Plaintiff alleges that Breitenbach, Hartman, and Henley authorized Suwe, Santos, and Hicks to withhold his mail during this time period.

The retaliation claim against Suwe is based on allegations that in retaliation for filing grievances, Suwe issued two false disciplinary charges against Plaintiff.

The retaliation claim against Breitenbach is based on allegations that Plaintiff then met with Breitenbach, who instructed him to stop filing kites and grievances, and the next day, Plaintiff was placed in administrative segregation.

Plaintiff moves for summary judgment, arguing: (1) Defendants violated his First Amendment rights when he did not receive the six photographs sent by his family in January 2023, for 12 days, and he was given no legitimate penological reason for the withholding of his mail; and (2) he was retaliated against when after filing grievances, he was instructed not to file further kites and grievances, he was subject to false, stacked disciplinary charges, his housing level was reduced, and he was placed in solitary confinement.[1]

Defendants also move for summary judgment, arguing: (1) they are entitled to qualified immunity; (2) there was no personal participation by the individual defendants; and (3) any punitive damages claim asserted by Plaintiff fails.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the

---

[1] Plaintiff also argues that he exhausted available administrative remedies, but Defendants are not asserting the defense of exhaustion; therefore, the court will not address this argument.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law").

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

///

///

### III. DISCUSSION

**A. First Amendment Mail**

Plaintiff reiterates his allegations that his family sent him six photos by mail in early January 2023, but he did not receive the photos for 12 days, and he was not given a reason for the delay in receiving the photos. Plaintiff includes as an exhibit Defendants' responses to discovery where the Defendants state there is no record of Plaintiff's mail being withheld in January 2023.

Defendants dispute that Plaintiff's mail was withheld in January 2023 as there is no record of such withholding, but even assuming it was, they argue that a 12-day delay in receiving his mail does not amount to a constitutional violation.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

It is well established that prisoners have a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citation omitted). Assuming Plaintiff's mail was withheld for 12 days, it was not clearly established, however, that this temporary delay in delivering Plaintiff's mail rises to the level of a constitutional violation. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (relying on *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987), which held that "merely alleging an isolated delay or some other relatively short-term, non content-based disruption in delivery of inmate reading materials will not support … a cause of action grounded upon the First Amendment")).

Moreover, even if a 12-day delay in delivering Plaintiff's mail rises to the level of a constitutional violation, Defendants are correct that Plaintiff has not introduced any evidence demonstrating that any of the Defendants personally participated in withholding Plaintiff's mail for 12 days. *See Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (there must be a showing of personal participation in the alleged violation of constitutional rights).

In sum, Plaintiff's motion for summary judgment will be denied and Defendants' motion will be granted as to the First Amendment mail claim.

**B. First Amendment Retaliation**

**1. Retaliation Standard**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

**2. Facts**

Apart from Plaintiff's allegation about the six photographs sent by his family being withheld, Plaintiff had another issue with the mailroom in early 2023. According to an investigation report, on February 9, 2023, while reviewing offender correspondence, three envelopes were discovered that were saturated with an unknown substance. Two of the envelopes were addressed to Plaintiff, and one to another inmate. The envelopes were

6

confiscated and subjected to narcotics testing which produced a presumptive positive result for synthetic cannabinoids, aka "spice." This triggered a review of the inmates' phone calls and correspondence. The Washoe County Crime Lab apparently subsequently confirmed the positive testing for spice. (ECF No. 87-1.) Plaintiff received mail rejection forms on February 9, 2023, on NDOC form 3021, indicating the incoming mail was rejected because Plaintiff was under investigation for conspiracy to introduce contraband into the facility. (ECF No. 75 at 43, 44.)

That same day, Plaintiff initiated a grievance, number 20063148724, stating he had received a mail rejection form stating he was under investigation for conspiracy to introduce contraband into the facility. He disputed that he had conspired to introduce contraband into the facility. He also asserted that the forms he received did not identify what mail was rejected. He claimed that he was being retaliated against for filing a grievance (presumably an earlier grievance) about his level being reduced, referencing grievance 20063147263 (which is not part of the record before the court). He asked that his mail be returned. He also included a comment that invited Suwe to come and "tear up" his cell, and said federal litigation would be forthcoming. (ECF No. 75 at 40-42.) The informal level grievance was denied, stating that Plaintiff had received a mail rejection form indicating that Plaintiff was being investigated for conspiracy to introduce contraband into the facility. (*Id*. at 39.) Plaintiff proceeded through the first and second levels of the grievance. (*Id*. at 28-38.)

On February 13, 2023, Plaintiff filed another grievance, number 20063148734, against Henley, Hartman, Suwe, and Santos, asserting that his family had sent six photos to him in early January 2023, and it took 12 days for him to get the photos and he was not given any notice for the delay. (ECF No. 75 at 54-56.) The grievance was forwarded to the Inspector General's (IG) Office for review by Breitenbach because it contained allegations of staff misconduct. (ECF No.

87-3 at 3.) Plaintiff also pursued this grievance through the first and second levels. (ECF No. 75 at 45-52.)

Plaintiff sent a kite to Breitenbach on March 12, 2023, asserting that Suwe and Santos had violated his rights as it had been brought to his attention he was under investigation for conspiracy to introduce contraband without any evidence. He asked for the test results of his mail. (ECF No. 75-1 at 5.) He sent another kite to Breitenbach on March 22, 2023, asking to be moved back to Unit 4 because he was unhappy with his current living situation. (ECF No. 75-1 at 6.)

The investigation report by Suwe found the intercepted correspondence, staff reports, offender phone calls and the test results indicated an attempt by Plaintiff to introduce contraband into the facility. The Washoe County Crime Lab subsequently reported that the envelopes tested positive for spice. (ECF No. 87-1.) In addition, there is a notation in Plaintiff's inmate disciplinary history report on April 3, 2023, indicating that Plaintiff was discovered making concerning statements about threats to staff on the phone. (ECF No. 87-2 at 3-4.)

Plaintiff was issued a notice of charges for Offense in Custody (OIC) 518716 by Suwe for possession or sale of intoxicants on April 3, 2023. (ECF No. 75-1 at 73.) At a disciplinary hearing on June 1, 2023, Plaintiff was found guilty of the charge. (*Id*. at 75-76.)

On April 4, 2023, Plaintiff sent a kite to Breitenbach asking for the test results of his mail, noting he had sent her a prior kite asking for the results and had not gotten a response. Plaintiff's kite contained a racial slur in connection with his assertion to Breitenbach that Plaintiff was not dumb enough to try to introduce contraband into the prison when he was about to be seen by the parole board. Breitenbach responded that they had spoken in person and the issue had been resolved. She also told Plaintiff in the future to not write derogatory comments

about anyone in kites or grievances. Breitenbach indicated that she had almost 1400 other inmates, and she gets to kites as soon as she can and advised Plaintiff to be to be mindful of others. (ECF No. 75-1 at 7.) Plaintiff sent another kite to Breitenbach that same day stating he had not been found guilty but had been sent to Unit 5, which he claimed was essentially solitary confinement. (*Id*. at 8.)

There is an administrative segregation classification notice dated April 7, 2023, indicating Plaintiff was being placed into administrative segregation for the safety and security of the institution. (ECF No. 95 at 121.)

Plaintiff was given a second notice of charges by Suwe on April 10, 2023, for OIC 518951, for threats to staff made in phone conversations on March 30, 2023, and April 7, 2023. (ECF No. 75-1 at 79.) Plaintiff had a disciplinary hearing on June 1, 2023, and he was found guilty of a reduced charge of abusive language. (ECF No. 75-1 at 81-82.)

Plaintiff filed another grievance, number 20063151714, on April 24, 2023, stating that he was retaliated against on April 7, 2023, when he was taken to solitary confinement on false charges of threats to staff. (ECF No. 75 at 60-61.)

**3. Analysis**

Plaintiff claims that Defendants retaliated against him for filing kites and grievances by serving him with false disciplinary charges and placing him in solitary confinement in a reduced housing level.

Defendants assert that Plaintiff was charged and convicted of the possession/sale of intoxicants related to the incoming envelopes that were saturated with the substance that eventually tested positive for spice. They contend that his housing level was reduced (he was moved to administrative segregation) because of the investigation and charges, and not because

of his filing of grievances. In addition, Defendants contend the second notice of charges was issued because Plaintiff was heard in phone calls having conversations that could be construed as threats to staff. They maintain the notice of charges and housing change were a result of Plaintiff's nefarious conduct, and not because he filed kites or grievances.

There is no question Plaintiff engaged in protected activity (the filing of grievances), and that adverse action was taken against him (being subject to disciplinary charges[2] and having his housing status changed to a more restrictive location). Moreover, taking the facts in the light most favorable to Plaintiff, the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (citation and quotation marks omitted). The issues presented here are whether the adverse action was taken because of Plaintiff's protected conduct, whether the challenged conduct reasonably advanced a legitimate correctional goal, and whether the Defendants personally participated in the alleged conduct.

An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (citation and quotation marks omitted). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]" *Id*. (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

---

[2] Plaintiff's briefing references a third notice of charges, but this claim is proceeding against Suwe based on the two notices of charges brought by Suwe. The third notice of charges was brought by another prison employee, Ramirez, who is not a defendant. As such, the court will not address this third notice of charges as there is no evidence of any connection to conduct by Suwe.

Circumstantial evidence may include proximity in time between the protected conduct and the alleged retaliatory action. *Id*. (citation omitted). An inmate must also show "that the challenged action 'did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted).

The notice of charges was brought by Suwe roughly two months after Plaintiff filed the grievances about the rejection of his mail (the envelopes that eventually tested positive for spice) and the withholding of his mail for 12 days. While proximity in time between protected conduct and alleged retaliation may serve as circumstantial evidence, the court does not find the roughly two-month gap between the filing of the grievances and the notice of charges is close enough in time to constitute circumstantial evidence of retaliatory motive on Suwe's part.

Moreover, the evidence indicates the notice of charges was brought for legitimate penological reasons. The first notice of charges was brought after the prison's investigation concluded that Plaintiff had attempted to introduce contraband into the prison through the mail. The second notice of charges was brought after Plaintiff's monitored phone calls were deemed to include conversations that were construed as threatening to staff. There is no doubt there were legitimate penological purposes for bringing the disciplinary charges. Plaintiff's speculation that the charges were retaliatory is insufficient to raise a genuine dispute of material fact for trial. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citations omitted); *Nelson v. Pima Comm. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

As for the claim against Breitenbach, Plaintiff has not produced any *evidence* to establish that his housing status was changed (*i.e.,* he was placed in administrative segregation) because of his filing of kites and grievances, as opposed to because he was pending disciplinary charges.

Instead, his allegations are based on speculation. Plaintiff's own motion references Defendants' discovery responses that the move to segregation would have been in connection with the pending disciplinary charges. The move to segregation coincides temporally with the notice of charges. Moreover, Plaintiff does not provide evidence that Breitenbach was responsible for his change in housing status, as he alleges.

In sum, Plaintiff's motion for summary judgment will be denied and Defendants' motion will be granted as to the retaliation claims against Suwe and Breitenbach.

### IV. CONCLUSION

Plaintiff's motion for summary judgment (ECF No. 75) is **DENIED**, and Defendants' motion for summary judgment (ECF No. 87) is **GRANTED**.

The Clerk shall kindly enter **JUDGMENT** in favor of Defendants.

**IT IS SO ORDERED**.

Dated: June 25, 2026

_____
Craig S. Denney
United States Magistrate Judge

12